IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 06 C 2555 |
| CHICAGO REGIONAL COUNCIL OF CARPENTERS, | ) ) ) | |
| Defendant. | ) ) | |
| ------------------------------------------------------------ | ) ) | |
| JEFF FEARON, | ) ) | |
| Intervenor. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Secretary of Labor filed a complaint against the Chicago Regional Council of Carpenters (CRC) alleging that the CRC violated sections 401(d) and (e) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 481(d) – (e), during its July 9, 2005 election. The Court permitted Jeff Fearon, one of the union members whose complaint triggered the lawsuit, to intervene in the case. The Secretary and the CRC have filed a motion for entry of a stipulation of settlement and order – effectively, a consent decree. Fearon has raised several objections to the proposed stipulation. For the reasons stated below, the Court approves the stipulation over Fearon's objections.

1

**Factual background**

The CRC is the regional affiliate of the United Brotherhood of Carpenters and Joiners of America (UBC); the CRC's constituency consists of forty-two local union affiliates. On July 9, 2005, the CRC conducted its officer election, during which local delegates nominated and elected CRC officers. Several union members, including Fearon, lodged internal protests regarding the election procedures. They were unable to secure a remedy from the union and thus filed complaints with the Secretary.

After investigating the complaints, the Secretary filed this action on May 8, 2006. Specifically, the Secretary challenged two provisions of the CRC's by-laws that establish who can serve as a local delegate to the CRC and who can serve as a CRC officer. Section 14(b) of the CRC by-laws addresses the election of delegates to the CRC. It provides that "[a]ny officer of the Regional Council . . . shall by virtue of his or her office be a Delegate to the Regional Council and shall be included in the total number of Delegates any Local is entitled to have." *See* Sec'y's Resp. to the Court's Inquiry, Ex. 1 (hereinafter "CRC by-laws"), § 14(b). Under this provision, a CRC officer automatically serves as a CRC delegate even though her local has not elected her to the position. Section 5(A) of the CRC by-laws discusses the qualifications for CRC officers. It states that "[o]nly those members who have been Delegates to the Regional Council for three (3) years successively, prior to nomination, shall be eligible for nomination and election." CRC by-laws, § 5(A). Under this provision, a union member must be elected as a delegate and serve for three years before she can run for CRC office.

In her complaint, the Secretary alleged that the challenged sections of the CRC by-laws violated sections 401(d) and (e) of the LMRDA, 29 U.S.C. §§ 481(d) & (e), by denying union

members a reasonable opportunity to nominate or be nominated as local delegates or as CRC officers and by failing to ensure that all local delegates and CRC officers were elected by secret ballot. The Secretary asked the Court to declare the CRC delegate and officer elections void and to require the CRC to redo both levels of the election. Compl. ¶¶ 1, 8-16.

**The Proposed Stipulation**

The Secretary and the CRC have reached an agreement under which the CRC admits no wrongdoing but agrees to redo certain delegate elections and the entire officer election under the Secretary's supervision. With regard to the delegate elections, the agreement requires local unions to conduct new elections for those delegate positions that are vacant or that are currently filled by a CRC officer. With regard to the officer election, the agreement provides that any union member in good standing may be a candidate for regional office. Before the elections, the Secretary and the CRC will hold a pre-election meeting to discuss the details of how the election will be conducted. The Secretary will supervise both levels of the election and will certify the results to the Court.

**Discussion**

The Court begins by addressing Fearon's attack on the CRC's counsel. This argument is irrelevant to the reasonableness of the proposed stipulation, but the Court believes it is nonetheless important to dispose of it. Specifically, Fearon questions the role of the CRC's counsel in "representing" the local affiliates. Fearon's criticisms are based, however, on a fundamental misunderstanding of who must participate in lawsuits in which the Secretary is challenging elections for an intermediate union body. The intermediate body alone must be a party to the lawsuit because delegates are considered members of the intermediate body, not

3

officers of the local affiliate. The local union need not be a party and therefore need not be represented. *See Brock v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers*, 682 F. Supp. 1415, 1430-31 (E.D. Mich. 1988), *vacated as moot by* 889 F.2d 685 (6th Cir. 1989). The Court therefore concludes that Fearon's criticisms of the CRC's counsel are irrelevant to this action.

The Court proceeds to Fearon's substantive critiques of the proposed stipulation. The Supreme Court has held that union members have a right to intervene in lawsuits by the Secretary to enforce Title IV of the LMRDA. *Trbovich v. United Mine Workers*, 404 U.S. 528, 537 (1972). Intervenors do not, however, have unfettered rights to participate in the lawsuit. Under *Trbovich*, they are limited to submitting evidence and proposing remedies regarding the violations charged by the Secretary. Intervenors may not inject into the case issues that are not raised in the Secretary's complaint. *See id.*

Several of Fearon's objections to the proposed stipulation are inappropriate because they involve issues that the Secretary opted not to raise in her complaint. Specifically, Fearon maintains that the proposed stipulation should have addressed several concerns he has about the Election Guide developed by the CRC's counsel and the provisions of the UBC constitution and the CRC by-laws relating to election committees, campaign literature, balloting, and conducting regional officer nominations and elections in executive committee. As the Secretary and the CRC point out, however, the Secretary did not address these issues in her complaint. For this reason, *Trbovich* does not permit the Court to consider these particular objections made by Fearon. *See id.*

Several of Fearon's objections relate to the violations alleged in the Secretary's

4

complaint but are misdirected because they are based on a misreading of several cases interpreting Title IV. The Court begins with Fearon's main concern that several provisions of the proposed stipulation contradict provisions of the UBC constitution and the CRC by-laws. Fearon's discussion on this issue is rather confusing, but as best as the Court can determine, it appears he is making two challenges to the proposed stipulation.

First, Fearon argues that the Court cannot approve a settlement agreement that contravenes the democratically-approved UBC constitution and CRC by-laws. In making this argument, Fearon misunderstands a citation in the Supreme Court's decision in *Wirtz v. Hotel, Motel, & Club Employees Union*, *Local 6,* 391 U.S. 492, 494 (1968). *Wirtz* quotes section 402(c) of the LMRDA, 29 U.S.C. § 482(c), which discusses the proper method for remedying a violation of Title IV that may have affected the outcome of an election. The provision states that "'the court shall declare the election void and direct the conduct of a new election under the supervision of the Secretary and, *so far as lawful and practicable*, in conformity with the constitution and bylaws of the labor organization.'" *Id.* at 494 n. 3 (quoting section 402(c) of the LMRDA) (emphasis added). Fearon reads *Wirtz* to require the Secretary and the CRC to conduct the new elections in accordance with every provision of the UBC's constitution and the CRC by-laws. The plain language of section 402(c), however, states otherwise: adherence to a union's constitution and by-laws is only required "so far as lawful and practicable." In this case, the proposed stipulation provides that the Secretary and the CRC need not abide by provisions that are arguably unlawful (e.g., CRC by-laws §§ 5(A) & 14(b)) nor by provisions that are impractical (e.g., UBC constitution § 31E (requiring that regional officer nominations occur in May and that elections occur in June)). The Court finds that the proposed stipulation conforms

5

to the requirements of section 402(c) and therefore rejects Fearon's challenge on this ground.

Second, recognizing that the proposed stipulation will not permanently eliminate the CRC by-laws that allegedly violate Title IV, Fearon contends that the CRC should be required to amend its by-laws to omit those provisions. The Court understands Fearon's concern, but the Secretary cannot obtain the type of prospective relief that Fearon seeks. As the Secretary states, she has the statutory authority to seek redress only for Title IV violations that have occurred in a prior election, not to seek prospective relief to prevent potential violations which may occur in future elections. *See* 29 U.S.C. § 482(b). The Court therefore rejects Fearon's argument.[1]

Fearon next contends that the CRC should be required to redo all delegate elections. Fearon relies on *Brock v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers*, 682 F. Supp. 1415 (E.D. Mich. 1988), a case in which an incumbent regional officer had violated Title IV by sending out a campaign letter on union letterhead to all local delegates. The court found this action tainted all of the local delegates and necessitated new local delegate and regional officer elections. *Id.* at 1432. According to Fearon, the violations alleged in this case also tainted both the local and regional elections, necessitating new elections at both levels.

The Secretary and the CRC argue that *Brock* is inapplicable in this context. The Court agrees. In this case, the Secretary made no allegation that all the local delegates had been tainted. Instead, her only concern was the fact that regional officers automatically served as local delegates. The proposed stipulation cures this problem: it requires locals that have

---

[1] The Court also notes that the CRC appears to be in the process of amending its by-laws to eliminate the provisions requiring that a CRC officer automatically serve as one of her local's delegates and that a CRC officer candidate have served as a delegate for the three years preceding her nomination and election.

regional officers serving as delegates to conduct new elections to fill those delegate vacancies. There is therefore no need for the Secretary and the CRC to take the much more drastic action of redoing the delegate elections for all forty-two local affiliates.

Fearon also contends that when the Court reviews the supervisory decisions made by the Secretary after the new elections, it should not apply the standard of review recited in the proposed stipulation. *See* Proposed Stipulation ¶ 6. The standard for reviewing actions taken by the Secretary in her supervisory capacity has been clearly established by the Seventh Circuit:

> If the Union, or its incumbent leadership, or any other interested party, wishes to object to any action taken by the Secretary in his supervisory capacity, that party assumes a heavy burden of persuasion and proof. If there is procedural irregularity (such as a complete lack of any opportunity to object or to explain), evidence of bias, or if the Secretary's action is manifestly arbitrary, such an interested party may be able to demonstrate that judicial intervention in advance of the election is necessary. Otherwise, generally speaking, the Secretary's decisions taken in his supervisory capacity must be heeded.

*Brennan v. Local 151, United Auto., Aerospace, and Agric. Implement Workers*, 486 F.2d 6, 8 (7th Cir. 1973). The proposed stipulation cites the standard correctly, albeit by citing a district court decision that cites *Brennan,* rather than *Brennan* itself. Proposed Stipulation ¶ 6 (citing *Donovan v. Local 998, Amalgamated Transit Union*, 570 F. Supp. 716, 719 (E.D. Wisc. 1983)). The Court therefore rejects Fearon's argument that it should apply any other standard in reviewing the Secretary's supervisory conduct.

Finally, Fearon argues that the CRC should be required to admit to violating Title IV or that the Court should conduct a factual inquiry into whether the CRC violated Title IV. The Seventh Circuit is has stated, however, that "a district court in reviewing a settlement agreement 'should not attempt to decide the merits of the controversy . . . (because) (a)ny virtue which may

7

reside in a compromise is based upon doing away with the effect of such a decision.'" *Airline Stewards and Stewardesses Ass'n, Local 550 v. American Airlines*, 573 F.2d 960, 963 (7th Cir. 1978) (quoting *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976) (abrogated on other grounds)). Any examination of whether the CRC violated Title IV would constitute an inquiry into the merits of the Secretary's complaint. For this reason, the Court declines to require CRC to admit wrongdoing or make an inquiry into the CRC's alleged wrongdoing.

The Court appreciates Fearon's concern about ensuring that the CRC's elections conform with principles of labor union democracy. His arguments, however, do not provide a basis for rejecting the stipulation proposed by the parties. In his lengthy submissions, Fearon includes several recommendations for how the new elections should be conducted. As the Secretary and the CRC point out, they will be holding pre-election meetings to develop detailed policies and procedures for conducting the new elections. The appropriate place for consideration of Fearon's suggestions is at the pre-election meetings, not in this Court.

Title IV gives the Secretary great latitude in making decisions regarding the enforcement of the statute. The Supreme Court has stated that "[r]eliance on the discretion of the Secretary is in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts." *Calhoon v. Harvey*, 379 U.S. 134, 140 (1964). The Court recognizes that this case differs from *Calhoon* in that the Secretary reached a settlement in this case after filing a lawsuit. The Court nonetheless finds that the Secretary is entitled to equally "great latitude" in fashioning a settlement agreement to resolve a Title IVdispute that has reached the courts.

The Court has carefully reviewed the complaint and the proposed stipulation. The stipulation requires the CRC to redo its elections, but without applying those CRC by-laws that arguably violate section 401 of the LMRDA. At the same time, it creates a targeted remedy by requiring that only those elections that were "tainted" by the allegedly unlawful CRC by-laws be redone. The Court finds that the Secretary was well-within her discretion in reaching this settlement and therefore approves the joint stipulation.

**Conclusion**

For the reasons stated above, the Court denies intervenor Jeff Fearon's motion in opposition to the proposed settlement stipulation, as well as Fearon's motion for judgment [docket nos. 18, 24]. The Court grants plaintiff's and defendant's joint motion for entry of stipulation of settlement and order [docket no. 13]. The Court retains jurisdiction of the case as provided in paragraph seven of the proposed stipulation.

Date: September 29, 2006

_____
MATTHEW F. KENNELLY
United States District Judge