UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor, | ) ) ) ) | Civil Action 06CV2555 |
| Plaintiff, | ) ) | Judge Kennelly |
| v. | ) ) | |
| CHICAGO REGIONAL COUNCIL OF CARPENTERS, | ) ) ) ) | |
| Defendant. | ) | |

## CERTIFICATION OF ELECTION

The election having been conducted in the above matter under the supervision of

the Secretary of Labor, United States Department of Labor, pursuant to a Stipulation of

Settlement and Order entered October 5, 2006, in the United States District Court for the

Northern District of Illinois, Eastern Division, in accordance with the provisions of Title

IV of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 481 et

seq. ) and in conformity with the constitution and bylaws of the defendant labor

organization, insofar as lawful and practicable, therefore:

Pursuant to Section 402(c) of the Labor-Management Reporting and Disclosure Act

of 1959 (29 U.S.C. § 482 (c)), and the authority delegated to me,

IT IS HEREBY CERTIFIED that the following named candidates have been duly elected to the offices designated:

| | |
|---|---|
| Martin C. Umlauf | President/Executive Secretary-Treasurer |
| Jeffrey Isaacson | First Vice President |
| Frank T. Libby | Second Vice President |
| Joseph Heilgeist | Warden |
| Tony Scornavacco | Conductor |
| Joseph Pastorino | Trustee |
| Dennis Farmer | Trustee |
| Richard Albrecht | Trustee |
| William Rabinak | Business Representative |
| Peter DiRaffaele | Business Representative |
| Mark Maher | Business Representative |

Attached herewith is a declaration setting forth the protests concerning violations which were alleged to have occurred in the conduct of the election and the findings of the investigation of these protests.

Signed this 12ᵗʰ day of October 2007.

*Patricia Fox*

Patricia Fox, Acting Chief
Division of Enforcement
Office of Labor-Management Standards
Employment Standards Administration
U.S. Department of Labor

<u>DECLARATION OF PATRICIA FOX</u>

I, Patricia Fox, am Acting Chief, Division of Enforcement, Office of Labor-Management Standards (OLMS), Employment Standards Administration, United States Department of Labor (Department). I caused an investigation to be made into the protests concerning violations of the Labor-Management Reporting and Disclosure Act of 1959 (Act), alleged to have occurred during the election for President/Executive Secretary-Treasurer, First Vice President, Second Vice President, Warden, Conductor, three Trustees, and three Regional Council Business Representatives of the Chicago Regional Council of Carpenters (CRC). The election, completed on March 31, 2007, was conducted under the supervision of the Department pursuant to an October 5, 2006 Order of the United States District Court for the Northern District of Illinois.

On November 11, 2006, Elizabeth A. Quizpi, the election supervisor (Election Supervisor) held a pre-election conference (PEC) to develop the rules, nominations and election procedures, including election protest procedures, and time frames for the CRC supervised election. The meeting also provided interested parties, such as the six complainants and the 42 locals affiliated with CRC, including the 224 current delegates, the opportunity to participate in formulating the election rules. Travis Ketterman, CRC's attorney, was also invited. Every aspect of the supervised election process was detailed in this PEC to simplify a complicated supervised election. A 19-page Election and Campaign Rules (Rules), developed from information gathered at the PEC, was mailed to all interested parties and PEC attendees. The Rules identified constitutional provisions that would not be enforced for this election, followed by an explanation for the waiver. The Rules also explained in detail the eligibility criteria for

1

running for local delegate positions and CRC office. The Rules were amended on December 22, 2006 and mailed to all interested parties and PEC attendees.[1] The amended Rules (Election Rules) were the only election rules applied throughout this supervised election. All local delegate elections were conducted with on-site polling, and absentee ballots were provided to any eligible member who requested one. CRC officers were nominated and elected by duly elected local delegates.

Six members submitted protests concerning the March 31, 2007 supervised election. The complainants submitted twenty-two pre-election protests containing a total of 63 allegations. In addition, two complainants submitted three post-election protests, containing 59 allegations, the majority of which reiterated allegations submitted in pre-election protests. OLMS responded to all written allegations either on the same day from receipt of the written allegation or within ten business days, depending on whether further investigation was necessary to provide a fuller explanation.

OLMS investigated all protests thoroughly. The investigation consisted of, among other things, interviews with the complainants, their witnesses, relevant union members, employers, and union officials. OLMS also reviewed the Carpenters' International Constitution, the CRC Bylaws, and the local bylaws for each of the forty-two locals. In addition, OLMS reviewed the union's data base, known as ULTRA, which provides dues histories of union members, and the

---

1 The rules were amended in December 2006 after the CRC challenged the time when the nominations period would end. Prior to the December 2006 amendment, the original rules allowed for the nomination periods in both the local unions and the CRC to extend past the nominations meetings at the respective body to allow for a longer absentee nomination period. The CRC believed that members attending nominations meetings should be able to ascertain the identity of nominees by the conclusion of the nominations meeting, rather than at a later date.

union's benefits hour report which reflects the benefits paid per hour to each employee by each employer with whom the union has a collective bargaining agreement. Moreover, OLMS conducted surveys to identify the locals whose delegate elections did not comport with the Act and compiled tables containing information gathered from the surveys and records review.

Below, protests concerning OLMS' supervised election are organized by complainant, beginning with pre-election protests, and proceeding to post-election protests. Within these categories, I have combined similar allegations for the sake of brevity but have maintained the integrity of each allegation. For reference purposes, each allegation is numbered, followed by OLMS' response.

### Ian Main's November 23, 2006 pre-election protest

1. <u>Allegation</u>: Jeffrey Fearon, a member of Local 58, was ineligible to run for Local 58 delegate because Fearon held a supervisory position as project manager.

<u>Response</u>: Investigation disclosed that Fearon was never a project manager, nor did he ever serve in a supervisory capacity while employed by his current employer. There was no violation.

### Joseph Heilgeist's February 12, 2007 pre-election protest

2. <u>Allegation</u>: Jeffrey Dick was ineligible to run as Local 250 delegate because he was a contractor.

---

No other provisions were changed.

Response: The Department's investigation could not substantiate this allegation. Section 31D of the International Constitution prohibits contractors from running for delegate. Dick, a member of Local 250, has been employed as a journeyman carpenter since April 4, 2006 for Ron Carani & Associates, an employer with a collective bargaining agreement with the local. In addition, Dick denied being a contractor during the qualifying period. Review of a CRC Benefits Division Benefit Hour Report for August 1994 to December 2006, a report listing employers with whom the union has a collective bargaining agreement and benefits paid for each employee, showed Ron Carani & Associates as the only employer for Dick. Moreover, Dick's 2005 IRS Form W-4 listed Ron Carani & Associates as his employer. The only evidence that supported the allegation that Dick was a contractor was a business card provided by Heilgeist showing a business by the name "J.D. Construction and Remodeling." Dick used this card when he was seeking employment but stopped using it because the card made him appear to be a contractor. Dick subsequently replaced the card with one that said journeyman plumber. No violation could be established.

Jeffrey Dick's February 26, 2007 pre-election protest

3.    Allegation: In the delegate election held for Local 250, candidate Joe Heilgeist used union envelopes to make campaign mailings to local executive board members and campaigned before the Local 250 executive board while being paid by the local. Specifically, Dick alleged that Heilgeist, in his letter to the local executive board, promoted his own candidacy and identified Dick as a contractor and ineligible to run for office.

4

Response: The investigation disclosed that Dick conceded he only briefly saw the letter Heilgeist presented to five local executive board members. Dick also admitted the letter did not mention Heilgeist's candidacy and that he did not have evidence that Heilgeist solicited votes or campaigned at the local executive board meeting, held on February 19, 2007. Although the Department could not obtain a copy of that letter, the Department reviewed the local's executive board meeting minutes for that date. The minutes showed that Heilgeist's letter was read to attendees; the gist of the letter concerned the eligibility of one of the nominees for delegate. Any member, including union officers, may question any member's eligibility to run for office. There was no violation.

James Armstrong's March 13, 2007 pre-election protest of Local 272's March 5, 2007 supervised delegate election

4.      Allegation: Local 272 prohibited Armstrong from posting his campaign literature on its bulletin boards based on a purported policy, a policy that was not in writing as the local did not provide Armstrong with a copy of the purported policy.

Response: Neither Title IV of the Act nor the union's constitution requires that such a policy be in writing and furnished to candidates. Additionally, it is not unlawful to prohibit the posting of campaign material on union property insofar as the prohibition is uniformly applied. Two letters from the OLMS Election Supervisor, dated February 1 and February 27, 2007, respectively, advised Armstrong of the Local 272 prohibition against posting campaign literature on union bulletin boards. The investigation further disclosed that Local 272 uniformly enforced this prohibition against all candidates. There was no violation.

5

5.    Allegation:  The notice of nominations and election was not posted on Local 272's bulletin board in the union hall.

Response:  In compliance with Section 8 of the Election Rules, and Section 401(e) of the LMRDA, 29 U.S.C. § 481(e), Local 272, under the supervision of OLMS, mailed to all its members a combined notice of nominations and election.  There is no evidence that any member did not know about the nominations or the election.  Although the Election Rules, Section 8, requires the posting of the combined notice of nominations and elections, the Act does not.  Even though this was a violation of the Election Rules, this violation could not have affected the outcome of the election because all members were informed of the nominations and the election through a mailed combined notice of nominations and election.

6.    Allegation:  Low membership voting was due to membership's fear that they would not appear on Local 272's "out of work list" if they opposed incumbents.

Response:  The investigation showed that membership voting was equal to or even higher than in preceding elections.  Armstrong provided no specific instances, and the investigation did not disclose any instances, where any Local 272 member was in fear of retaliation.

7.    Allegation: Dennis Farmer, Local 272 financial secretary, has access to the local's membership list and could easily conduct a selective mailing comprised of members who would vote for him, giving incumbents an unfair advantage.

Response:  The investigation disclosed that all Local 272 officers have access to all local records, including the local's membership list, and need that access to perform their duties.  There is no evidence that Farmer used the local's membership list for campaign purposes, nor did

6

Armstrong provide any such evidence. Furthermore, candidates for CRC delegate had the right to make campaign mailings to the membership and partial mailings were not prohibited. There was no violation.

8.      Allegation:  At Local 272's membership meeting on March 12, 2007, Dennis Farmer and local election committee chair Mark Davern, "made an intimidating and impartial [sic] statement to members, that the opposition candidate did not vote" thereby compromising the secrecy of the ballot.

Response:  The investigation disclosed that by the time Local 272's membership meeting took place on March 12, 2007, the local had concluded the March 5, 2007 tally. Regardless, ballot secrecy is not compromised by the fact that a member does or does not vote. In addition, the investigation clarified Armstrong's written allegation: Armstrong objected to an announcement at the membership meeting that he (Armstrong) had not voted in the election. The investigation disclosed that Armstrong's ballot was not counted because he submitted his ballot too late, after the local's March 2, 2007, deadline. There was no violation.

Jeffrey Fearon's pre-election protests, organized by issue

9.      Allegation:  Invitees to the November 11, 2006 PEC should have included all 47,000 members, otherwise not all locals would inform their membership of the PEC.

Response:  The investigation disclosed that the PEC could not possibly accommodate 47,000 members, nor does union democracy or the LMRDA require all union members attend a PEC. OLMS' list of invitees consisted of "interested parties" which included the six complainants, the 224 delegates which included CRC incumbent officers, and 42 local unions.

7

OLMS advised Fearon on several occasions that he could invite as many members as he wanted to the PEC. There was no violation.

10.     Allegation: The PEC should have been postponed otherwise Fearon and the other five complainants would be outnumbered by the original number of invitees.

Response: Fearon's allegation was not a valid reason to delay the PEC. In any event, OLMS offered Fearon the opportunity to invite members of his choice. There was no violation.

11.     Allegation: The Election Supervisor and the CRC set up the election rules prior to the PEC, excluding Fearon and other complainants from the process and giving the incumbents an unfair advantage.

Response: The CRC and its attorneys are authorized to act on behalf of the CRC. OLMS, mindful of the time constraints to complete this supervised election, discussed with the CRC and its attorney certain aspects of the nominations and elections procedures prior to the PEC. However all attendees, including Fearon, had the opportunity to challenge any nominations and elections procedure at the PEC, and in fact challenged numerous of the procedures to the Election Supervisor, who timely addressed each and every one of Fearon's concerns. There was no violation.

12.     Allegation: There was no basis for amending the November 11, 2006 Rules with respect to the nomination procedure because the amended rules did not remedy CRC's stated reason for challenging the nominations procedure. CRC stated that it wanted attendees at the nominations meeting to be able to ascertain the identity of nominees by the conclusion of a nominations meeting. However, the remedy CRC successfully proposed did not provide the goal, given that

list of nominees identified at the end of a nominations meeting could change subject to successful eligibility challenges.

Response: Prior to the December 2006 amendment, the Rules allowed for the nomination periods in both the local unions and the CRC to extend past the nominations meetings at the respective body to allow for a longer absentee nomination period. OLMS, exercising its authority to amend the election rules and promulgate additional rules to accommodate the supervision of the election, determined that CRC's rationale was reasonable. There was no violation.

13. Allegation: Travis Ketterman's election rules, known as *The Guide*, will be applied to conduct the supervised election.

Response: OLMS did not apply *The Guide* to conduct the supervised election; as noted above, only the Election Rules were applied for the supervised election. There was no violation.

14. Allegation: In drafting the nominations procedures, OLMS accepted CRC's statement of past practice even though CRC's July 9, 2005 election was the first CRC election ever conducted, thereby vitiating any claim that CRC had an established past practice.

Response: The investigation disclosed that although the CRC was established in 2004, the CRC had been the Chicago and Northeastern Illinois District Council of Carpenters for decades. The CRC's "past practice," as used by CRC, refers to the practices and policies of the Chicago and Northeastern Illinois District Council of Carpenters. There was no violation.

15. Allegation: The CRC's nominations of officers are unfair and undemocratic because it is restricted to the delegate body rather than encompassing the entire membership.

Response: The LMRDA permits intermediate bodies, such as the CRC, to hold indirect elections, and the International has adopted such a practice. There was no violation.

16. Allegation: All 42 locals should be required to hold new nominations and elections and failure to do so treats members differently, in violation of the International Constitution, the LMRDA, and the United States Constitution.

Response: There was no legal basis to require locals whose elections were conducted in accordance with the provisions of the LMRDA to hold new nominations and elections, and to require those locals to conduct new nominations and elections would have been undemocratic as it would have vitiated votes cast by members for the candidates of their choice, among other reasons. There was no violation.

17. Allegation: Fearon and the other complainants should have been notified of the Department's decision concerning which locals would be required to hold new nominations.

Response: The investigation showed that all affected locals and interested parties, including Fearon, were notified of OLMS' decision concerning the locals required to hold new nominations and elections. There was no violation.

18. Allegation: The Election Supervisor did not provide Fearon with a definition for "past practice" and "union policy" with respect to unions, even though he made a timely request.

Response: Investigation disclosed that the Election Supervisor referred Fearon to the OLMS Division of Interpretations and Standards. That division provides, among other things, clarification of OLMS' policies and practices, including definitions for words and phrases used in the administration and enforcement of the LMRDA. There was no violation.

10

19.     Allegation:  Notice of the supervised election should have been mailed to all 47,000 members, and OLMS could have accomplished this by placing an announcement in the CRC magazine when there was still time to make the November 11, 2006 deadline for submissions, instead of contacting locals and having locals advise their membership of the supervised election.

Response:  OLMS considered using the CRC magazine as a viable method for membership notification and discussed this mode of notification at the PEC held on November 11, 2006.  November 11, 2006 was the submissions deadline for the CRC magazine, which OLMS learned too late for any submission.  Regardless, OLMS was not required to provide any notice of the supervised election in the CRC magazine; rather, OLMS mailed notice of the supervised election to all interested parties when it invited them to the PEC.  Additionally, the CRC website included information about the supervised election.  There was no violation.

20.     Allegation:  Armstrong may be found ineligible to run for delegate for Local 272 through no fault of his own, but rather because his dues payment was not yet posted by that local.

Response:  Because this was a pre-election complaint, Fearon did not know whether or not Armstrong would be eligible to run for delegate.  At its nominations meeting held on February 12, 2007, Local 272 determined Armstrong to be a member in good standing and eligible to run for delegate.  There was no violation.

21.     Allegation:  OLMS should not have accepted as fact CRC's statement that it had a policy of denying political advertisements to justify CRC's rejection of Fearon's request to place a political advertisement in the CRC magazine, the only CRC publication that reaches all 47,000 members, when CRC could point to no written policy against buying political advertisements in the CRC magazine.

11

Response: OLMS' investigation disclosed that CRC's policy was based on CRC's reluctance to allow its magazine to become a political forum for candidates. CRC's policy discriminated against no member, as it did not allow any candidate advertisements. There was no violation.

22. Allegation: Local 58's cost for mailing campaign literature, at $50 per hour, with a four-hour minimum, plus an additional $50 for mailing labels, was unreasonable given that a carpenter's earnings in one day is less than that amount.

Response: OLMS' investigation disclosed that Local 58's rate for mailing campaign literature in its supervised election was the same amount charged in its last two elections. No candidate, including Fearon, was unable to mail campaign literature because of the rate. There was no violation.

23. Allegation: For the supervised elections, including the CRC and affected locals, candidates should have been permitted to make campaign mailings before nominations.

Response: The Election Supervisor, applying Section 12 of the Election Rules which incorporates Section 401(c) of the LMRDA, 29 U.S.C. § 481(c), allowed any bona fide candidate to make early campaign mailings. There was no violation.

24. Allegation: The affected locals' campaign period which was the time between nominations and election, was shortened to 28 days and in some instances, to 21 days, a deviation from past practice that allowed for 35 days of campaigning.

Response: The investigation disclosed that the campaign period was not shortened and in some instances was even longer than 35 days. This is because nothing in the Election Rules prohibited bona fide candidates from campaigning well before nominations. In fact, Fearon

12

made a campaign mailing on or about February 1, 2007, prior to Local 58's February 6, 2007, nominations meeting, and another slate also made an early campaign mailing. There was no violation.

25. Allegation: Local 58 failed to follow Fearon's instructions for processing his campaign literature, and instead of just labeling envelopes Fearon provided, Local 58 mailed his campaign literature, depriving Fearon of the opportunity to verify the count, view the condition of his campaign mailing in final form, and verify the mailing of his campaign literature.

Response: The investigation disclosed that Fearon brought a box containing his campaign material to Local 58 and left the box with a Local 58 secretary. Fearon did not provide the secretary with any instructions, and she therefore believed that Fearon's campaign literature was to be labeled and mailed. Because Fearon provided no instructions for the handling of his campaign mailing and did not make a request to observe the mailing, there was no violation.

26. Allegation: Fearon believed that the names of candidates on the ballot should have listed candidates' first name followed by the last name, rather than candidates' last name followed by first name.

Response: Section 7 of the Election Rules provided that candidates' names would appear on the ballot in alphabetical order using his or her last name for each position. This method was employed to avoid voter confusion which may have ensued because two of the candidates for delegate had the same first name (Jeff Fearon and Jeffrey Isaacson). There was no violation.

27. Allegation: Absentee ballot voting for local elections should be permitted because of the type of work carpenters do.

Response: Absentee balloting was permitted and was detailed in the Election Rules in Sections 14 and 15, pages 14 through 16. There was no violation.

28. Allegation: The Election Rules require those members requesting absentee ballots to provide their membership number but OLMS did not expressly state what constituted "member number" as there are three types of numbers the union uses: an ULTRA number, working card number, or the last four digits of a member's social security number.

Response: Section 14(b)(1) of the Election Rules required members requesting an absentee ballot to provide a "member number" as a safeguard against improper requests. The investigation disclosed that the affected locals accepted any of the above three member numbers from a member requesting an absentee ballot. No one who requested an absentee ballot was confused about the issue of member numbers and no one was denied an absentee ballot for this reason. There was no violation.

29. Allegation: The requirement that members must telephone during regular business hours to receive an absentee ballot is inconvenient because members are working during the day and do not have access to a telephone, and members have to provide their member number rather than their social security number.

Response: The investigation disclosed that OLMS limited the hours for requesting absentee ballots to business hours in order to connect members requesting absentee ballots to a live person at an affected local for the purpose of eliciting accurate member information. However, all the affected locals have answering machines on which members could leave information which the affected local could then use to contact that person the next day. The

14

investigation failed to disclose any member who wanted an absentee ballot but was unable to do so because of an affected local's business hours. There was no violation.

30.     Allegation: A member of Local 58, upon contacting the local for an absentee ballot, was told that he could not do so at that time and did not request any contact information from that member.

Response: The member in question contacted Local 58 on February 1, 2007, before the local had yet held its nominations meeting. Upon further questioning by the Election Supervisor, it became clear that the member was interested in submitting an absentee nomination which does not require the submission of a form. The Election Supervisor advised the member how to submit a written nomination and also advised that the absentee ballot packages would be mailed by OLMS, not the local, which appeased the member's concerns about ballot tampering. The member then requested an absentee ballot from the Election Supervisor, who promptly arranged to have an absentee ballot packet mailed to him. There was no violation.

31.     Allegation: Members may have felt intimidated by the demand that they furnish their employer's name when requesting an absentee ballot, believing the local may somehow use this information against them.

Response: OLMS, not the union, made the demand for employer affiliation, to overcome any confusion that may result from members having the same names. Also, the employer verification demand was not a prerequisite to voting. There was no violation.

32.     Allegation: The Election Rules should have been provided in Spanish and Polish, not just in English, as there are a number of union members who speak one of those languages and little English.

15

Response: The investigation disclosed that none of the affected locals had large populations of non-English speaking members, nor did any of those affected locals have a past practice of providing any election-related materials in any language other than English. Consequently, the Election Rules were provided only in English. There was no violation.

33. Allegation: Several of the complainants, members of Local 1, Local 58 or Local 181, requested a copy of the CRC December 2, 2006 meeting minutes but that request was denied.

Response: The investigation disclosed that the CRC has a policy prohibiting reproduction of CRC minutes but permits members ready access to inspect CRC minutes. There was no violation.

34. Allegation: Members should have been canvassed to determine whether to provide on-site polling or a mail ballot election.

Response: The LMRDA does not require the canvassing of members regarding the manner in which an election should be held. Nevertheless, all members had both options available to them because any member could request an absentee ballot without providing a justification for the request. There was no violation.

35. Allegation: Ian Main, an officer of Local 58, attended a district court proceeding on this case while being paid with union funds.

Response: As a union officer, Main was acting within the scope of his duties. There was no violation.

36. Allegation: Local 272 officers' conduct constituted campaigning when, instead of just reading CRC's December 2, 2006 meeting minutes, the officers criticized the content of the meeting minutes. Past practice dictates that locals read to their members the minutes of CRC's

16

last meeting; in this instance, Local 272 officers, while reading the December CRC minutes to attendees, took the opportunity to disparage CRC's decision to enter into a supervised election. Also, Local 272 used union resources, such as the local's dais, and the CRC minutes, which the CRC regards as union property, when delivering their criticism of CRC's actions.

Response: Section 401(g) of the LMRDA, 29 U.S.C. § 481(g), prohibits unions from using union funds or resources to promote any person's candidacy. Even if Local 272 officers criticized the court order and stipulation of settlement, such speech would not constitute campaigning within the meaning of the LMRDA, as no person's candidacy was promoted. See 29 C.F.R. § 452.73. Therefore, even if union property were used during Local 272's January 2007 membership meeting, there would be no violation since no campaigning occurred during that meeting. There was no violation.

37.     Allegation: Polling on Saturdays should have been included in the polling dates so that members did not have to take time off from work in order to vote, and past practice should not have been the determining factor.

Response: Many factors, including past practice and convenience to members, were considered in deciding the polling days and hours. Each affected local was consulted individually and, where practicable, was permitted to hold nominations and elections on its regularly scheduled membership meeting days. In addition, members had the option to vote by absentee ballot. There was no violation.

38.     Allegation: Polling hours were inconsistent among locals, and Local 58 had fewer polling hours than many other affected locals.

Response: All affected locals had a minimum of five polling hours, a sufficient amount of time within which to allow their members to cast a vote. Further, all members from affected locals were provided with notice of the polling hours and could arrange for absentee balloting should those hours conflict with the member's work hours. There was no violation.

Jeff Fearon's April 3, 2007 and April 10, 2007 post-election protests

39.    Allegation: Fearon did not receive a copy of the CRC nominations notice despite the fact that he nominated himself for CRC trustee.

Response: Investigation disclosed that Fearon did not win the election for Local 58 delegate. CRC delegates were the only ones permitted to nominate and vote for CRC officers. Consequently, the CRC was not required to provide Fearon with a notice of nominations. However, Fearon knew or should have known of the CRC nominations date because as an interested party OLMS provided him with a copy of the Election Rules, attached to which was a copy of the supervised election timeline. Additionally, the CRC website included notice of nominations for CRC officers. There was no violation.

40.    Allegation: Fearon challenged the entire CRC election process, including the rules for the election, the interpretation of those rules, the distribution of those rules, the amendment process, and the process for notifying the membership concerning the election rules.

Response: *See* Fearon's Pre-Election allegations and OLMS' responses above.

18

James Armstrong's April 9, 2007 post-election protest

41. Allegation: Local 272 prohibited Armstrong from posting his campaign literature on its bulletin boards based on a purported policy, a policy that was not in writing as the local did not provide Armstrong with a copy of the purported policy.

Response: *See* OLMS Response to allegation no. 4, above.

42. Allegation: The notice of nominations and election was not posted on Local 272's bulletin board in the union hall.

Response: *See* OLMS Response to allegation no. 5, above.

43. Allegation: Some Local 272 members did not participate in Local 272's March 5, 2007 election of delegates because they were intimidated by a Local 272 officer in August 2006 when they were told that association with Armstrong would lead to not being included on the "out of work" list.

Response: Armstrong did not provide the names of any Local 272 members who were purportedly too intimidated in the preceding year's election to participate in this Department of Labor supervised election. There was no violation.

44. Allegation: Local 272 funds may have been used to pay for candidates' campaign literature instead of using those funds to pay for a quarterly publication.

Response: Upon further questioning, Armstrong had no information to provide OLMS concerning this allegation, nor did OLMS' investigation uncover any such evidence. There was no violation.

19

The Department has concluded from its investigation and analysis that no violation of Title IV of the Act occurred during the March 31, 2007, supervised election that may have affected the outcome of the election for President/Executive Secretary-Treasurer, First Vice President, Second Vice President, Warden, Conductor, three Trustees, and three Regional Council Business Representatives of the Chicago Regional Council of Carpenters (CRC). The election held pursuant thereto complied with the October 5, 2006, Order of the United States District Court for the Northern District of Illinois and no reason exists to overturn the results of this election.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 12th day of October, 2007, at City of Washington, District of Columbia.

Patricia Fox

Patricia Fox, Acting Chief
Division of Enforcement,
Office of Labor-Management Standards,
Employment Standards Administration,
United States Department of Labor

20